IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VICTOR VELAZQUEZ FELICIANO,

     Plaintiff,

          v.                     CIVIL NO. 98-1243 (DRD)

TRIBUNAL SUPREMO DE PUERTO RICO et
al.

     Defendants,

## OPINION AND ORDER

Pending before the Court is Co-defendants' motion for summary judgment (Docket No. 27)

and Plaintiff's opposition thereto (Docket No. 28).

### I. Introduction

Plaintiff Víctor Velázquez Feliciano filed a complaint pro se in which he seeks monetary and

equitable relief for alleged violations to Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981,

and the United States Constitution. Velázquez urges this Court to order the Puerto Rico Supreme

Court ("the Supreme Court") to grant a hearing on Plaintiff's March 1997 bar exam score or to allow

him to retake the Puerto Rico Bar Examination ("Bar Examination"). Plaintiff further questions the

Puerto Rico Board of Bar Examiners' (the "Board") failure to grant Plaintiff's request for

reconsideration on his Bar Examination results. For the reasons set forth herein, Co-defendants'

motion for summary judgment (Docket No. 27) is granted and Plaintiff's causes of action are

**DISMISSED WITH PREJUDICE.**

### II. Background

In accordance with the standards for summary judgment, the following are the facts not in



controversy, supported by the record, and interpreted in the light most favorable to the Plaintiff[1]:

Since March 17, 1983, the Supreme Court, through its then enacted Rule 2(c) of the Regulations for the Board of Bar Examiners ("the Board Regulations"), has reserved its authority to limit the number of times that an applicant seeking admission to the Bar may sit to take the corresponding Bar Examination. On or around May or June of 1984, Velázquez Feliciano obtained his Juris Doctor degree from Interamerican University. Prior thereto, on February 23, 1984, the Supreme Court limited to five (5) the number of attempts to pass the Examination[2]. Since February 1986, up to and including the current Rule 5.8.1 of the 1998 Board Regulations, the Supreme Court has consistently limited to six (6) sittings the number of attempts to pass the Bar Examination.

Since his graduation from Law School in 1984 Plaintiff has attempted to pass the Bar Exam on six (6) different occasions.[3] To date he has been unable to pass the general substantive and procedural portion of the Bar Exam[4]. On his last sitting, March 1997, Plaintiff obtained a calibrated grade of 583, falling short of the calibrated passing grade by 13 points.

Pursuant to Board Regulations, on June 30, 1997, Plaintiff moved for reconsideration on the

---

[1]Defendants filed a Statement of Uncontested Facts in Support of their Motion for Summary Judgment accompanied by corroborative documentation. Plaintiff admits that there is no controversy as to these facts. See pages 3-4 of Plaintiff's Memorandum of Law in Opposition to Summary Judgment (Docket No. 28). Nevertheless, Plaintiff filed a Statement of Contested facts in which he claims that the raw score in the General Bar Examination was not properly calibrated according to scientifically accepted methods of calibration and that as a question of fact he passed the March 1997 General Bar Examination. Plaintiff accompanies his statement with his declaration under penalty of perjury. Within the same document he contests the low probability that an applicant may approve the general bar exam on his sixth attempt.

[2]The Rule stated that the Supreme Court had the discretionary power to grant applicants permission to pursue additional attempts to pass the Bar Examination.

[3]Plaintiff's failed attempts at passing the Bar Examination were in September 1984, September 1985, March 1986, March 1989, March 1996 and March 1997.

[4]Velázquez Feliciano passed the Notarial Law section of the March 1996 Bar Examination.

evaluation and results of his answers to seven (7) of the twelve (12) essay questions made during the March 1997 Bar Examination. The Board, after evaluating de novo the answers to these questions, denied the reconsideration[5].    On July 29, 1997, Plaintiff filed a petition of review before the Supreme Court. On November 10, 1997, the Supreme Court denied the petition.  Plaintiff now appears before this Court seeking relief from application of Rule 5.8.1, seeking an order directing the Supreme Court to hold a hearing on Plaintiff's sixth Bar Examination results, and seeking an award of damages and attorney's fees.

### III.  Standards for Summary Judgment

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." Vega-Rodriguez v. P.R.T.C., 110 F.3d 174, 178 (1ˢᵗ Cir. 1997). Accordingly, federal courts will grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R .CIV. P. 56(c).

To defeat a motion for summary judgment the resisting party will have to show the existence of "a trial worthy issue as to some material facts." Cortes-Irizarry v. Corporación Insular,111 F.3d 184, 187 (1ˢᵗ Cir. 1997). A fact is deemed "material" if the same "potentially affect[s] the suit's determination." Garside v. Osco Drug Inc., 895 F.2d 46, 48 (1st Cir. 1990). "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's

---

[5]Adjustments were appropriate in the evaluation of only one of the seven questions. His adjusted calibrated point total increased to 588, eight (8) points short of the passing calibrated grade.

favor." Cortes-Irizarry, 111 F.3d at 187. Nonetheless, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." Ayala Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (citations omitted)

The movant for summary judgment, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." Vega-Rodriguez, 110 F.3d at 178. Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment." Cortes-Irizarry. 111 F.3d at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood . . ." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

The movants in the instant case have met their burden of demonstrating the absence of a genuine issue of material fact. In fact, Plaintiff himself has conceded to this in his Memorandum of Law. (Docket No. 28, pg. 4) Accordingly, the Court may proceed to adjudicate the issues of law surrounding Co-defendants' motion for summary judgment.

### IV. Analysis

#### A. Claims against the Puerto Rico Supreme Court and the Board of Bar Examiners

Co-defendants maintain that the Eleventh Amendment Bars this Court from entertaining

Plaintiff's claims against the Supreme Court and the Board.  Moreover, Co-defendants contend that

even without the Eleventh Amendment's Bar, neither the Supreme Court or the Board are "persons"

under § 1983 and, thus, the complaint fails to state a claim against them.

     *1. Eleventh Amendment Immunity*

     The Eleventh Amendment renders states, including Puerto Rico, immune from claims

brought in federal courts by citizens of the same or any other state.  Metcalf & Eddy v. P.R.

Aqueduct & Sewer Authority, 991 F.2d 935, 938 (1st Cir. 1993); De León López v. Corporación

Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991); Ezratty v. Com. of Puerto Rico, 648 F.2d 770,

776 n. 7 (1st Cir. 1981); Pérez v. Rodríguez Pou, 575 F.2d 21 (1st Cir. 1978).    There are, of course,

exceptions to this broad rule.  Specifically, the Eleventh Amendment protection does not apply in

four (4) circumstances: a state may consent to be sued in a federal forum; a state may waive its own

immunity by statute or the like; Congress may abrogate state immunity; or, if circumstances allow,

other constitutional imperatives may take precedence over the Eleventh Amendment's Bar.  Metcalf,

991 F.2d at 938.  See also Ramírez v. Puerto Rico Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983) (the

Eleventh Amendment "bars federal court lawsuits by private parties insofar as they attempt to impose

liabilities necessarily payable from public coffers, unless the state has consented to suit or unless the

protective cloak of the amendment has been doffed by waiver or stripped away by congressional

fiat.")

     In the instant case Plaintiff does not advance the applicability of any of the above exceptions

to the Eleventh Amendment's immunity.  Rather, Plaintiff argues that his causes of action against

the Supreme Court and the Board fall under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 453 (1908).

(Docket 28, pg. 9).  Plaintiff, however, has erred in his interpretation of the cause of action created

by <u>Young</u>, for <u>Young</u> and its progeny applies only to causes of action for injunctive relief against officers in their official capacities, not against states as such. Being so, the question the Court must address is whether Plaintiff's claims against the Supreme Court and the Board are barred by the Eleventh Amendment. The Court concludes that they are.

In <u>Metcalf</u> the First Circuit stated the test that Courts must apply in determining the applicability of Eleventh Amendment immunity to an arm or instrumentality of the state:

> The Eleventh Amendment's primary concern is to minimize federal courts' involvement in disbursal of the state fisc. It follows that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit. [...] Generally, if a state has a legal obligation to satisfy judgments against an institution out of public coffers, the institution is protected from federal adjudication by the Eleventh Amendment. (Citations omitted)

991 F.2d at 939. <u>See also</u> <u>Ford Motor Comp. v. Dept. of Treasury of Indiana</u>, 323 U.S. 459, 464 (1945).

There is no controversy in this case that the Supreme Court is an arm of the Commonwealth of Puerto Rico or that any judgment against the Supreme Court would have to be satisfied from Puerto Rico's coffers. <u>See</u> P.R. Laws Ann. tit. 1, Const. Art. V, § 1; P.R. Laws Ann. tit. 23, § 104(a)(7); P.R. Laws Ann. tit. 3, §§ 283b(d) and 283e(a). Hence, all claims against the Supreme Court are dismissed on Eleventh Amendment grounds.[6]

Likewise, there is no controversy in this case that the Board is an administrative arm of the Supreme Court created by the Supreme Court's regulation under its inherent authority to regulate the

---

[6]Other federal courts facing actions against state courts have not hesitated to reach the same conclusion as this Court. <u>See, e.g.</u>, <u>McFarland</u> v. <u>Folsom</u>, 854 F. Supp. 862, 872 (M.D. Ala. 1994); <u>Kaimowitz</u> v. <u>The Florida Bar</u>, 996 F.2d 1151, 1155 (11th Cir. 1993); <u>Browne</u> v. <u>N.Y.S. Court System</u>, 599 F. Supp. 36, 38 (E.D. New York 1984).

admission to the practice of law and under Act No. 17 of June 10, 1939, P.R. Laws Ann. tit. 4, §§ 721 et seq. See 1998 Board Regulations. Nor is there controversy that as a creature of the Supreme Court's regulations, the Board lacks the capacity to sue and be sued. Accordingly, the Board is entitled to the same Eleventh Amendment immunity as that conferred upon the Supreme Court and all claims against it are dismissed with prejudice.[7]

### 2. "Persons" under section 1983

Even if the Supreme Court and the Board were not protected by the Eleventh Amendment's immunity, neither the Supreme Court or the Board are persons under § 1983. That is, given the Court's determination that the Supreme Court and the Board are merely arms of the Commonwealth of Puerto Rico, both the Supreme Court and the Board must be treated as states for purposes of § 1983. Under § 1983 a state is not a person. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64; 109 S.Ct. 2304, 2308 (1989). Wilson v. Brown, 889 F.2d 1195, 1197 (1st Cir. 1989). Plaintiff's claims against the Supreme Court and the Board were brought under § 1983. Hence, on the alternative, Plaintiff's claims against the Supreme Court and the Board are dismissed with prejudice for failure to state a claim under § 1983.

### B. Claims for damages against officials in their official capacity

The Eleventh Amendment's immunity "may also attach to suits against state officials 'when the state is the real, substantial party in interest.'" De León López, 931 F.2d at 121. See also Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908 (1984). "State

---

[7]Other federal courts similarly facing suits against state boards of bar examiners have reached the same conclusion. See, e.g.: Ware v. Wyoming Board of Bar Examiners, 973 F. Supp. 1339 (D. Wyoming 1997); McFarland, 854 F. Supp. at 872; Ramos v. California Committee of Bar Examiners, 857 F. Supp. 702, 705 (N.D. Cal. 1994); Gianni v. Real, 711 F. Supp. 992 (C.D. Cal. 1989), aff'd 911 F.2d 354 (9th Cir. 1990).

officials, though not themselves 'the State,' act for the State when operating in their official capacities, and thus, should be entitled to immunity because their actions are in reality the State's actions." De León López, 931 F.2d at 121. Consequently, "[t]he Eleventh Amendment prevents suits seeking monetary relief to be paid out from the state treasury. Any attempt to sue a state officer in his or her official capacity for the only purpose of seeking monetary relief will be barred by the Eleventh Amendment." Vega Castro v. Commonwealth of Puerto Rico, 43 F.Supp.2d 186, 189 (D.P.R. 1999). Furthermore, even if the Eleventh Amendment does not Bar suits against state officials acting in their official capacity, "neither states, nor state officials acting in their official capacities are 'persons' within the meaning of § 1983. Consequently, a cause of action for damages against these parties will not lie." Wilson, 889 F.2d at 1197. See also Will, 491 U.S. at 71.[8]

Plaintiff has brought claims for damages against José Andréu García as Chief Justice of the Supreme Court, Federico Hernández Denton as Associate Justice of the Supreme Court and President of the Board, Ariel O. Caro Pérez as member of the Board, José E. Colón Rodríguez as member of the Board, Héctor Cortes Babilonia as member of the Board, Carmen Curet Salim as member of the Board, Waleska Delgado Marrero as member of the Board, Armando Martínez Fernández as member of the Board, Aida Martínez González as member of the Board, Gaspar Martínez Mangual as member of the Board, Luis Morales Steinman as member of the Board, Julio Nigaglioni Arrache as member of the Board, Nelson Pérez Sosa as member of the Board, Harry N. Padilla Martínez as member of the Board, Francisco A. Rebollo Casalduc as member of the Board,

---

[8]"Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. [...] As such, it is no different from a suit against the State itself." Wilson, 889 F.2d at 1197. See also Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 877 (1985).

Luis R. Rivera Rivera as member of the Board, Julie Rodas Viñas as member of the Board, Manuel

San Juan de Martinó as member of the Board, Irma Valdejulli Pérez as member of the Board, and

Rafael Vila Carrión as member of the Board.  In reality, these claims are all for damages against the

entities to which these Co-defendants belong, namely, the Puerto Rico Supreme Court and the Board.

As such, these claims are claims against the Commonwealth of Puerto Rico and not actionable under

the Eleventh Amendment or § 1983.  Accordingly, all of the above claims are dismissed with

prejudice.

## C.  Claims for damages against officials in their personal capacities

Plaintiff also brings suit in their individual capacity against Justice Hernández Denton;

Yvette Roselló González; Ariel O. Caro Pérez; José E. Colón Rodríguez; Héctor Cortes Babilonia;

Carmen Curet Salim; Waleska Delgado Marrero; Armando Martínez Fernández; Aida Martínez

González; Gaspar Martínez Mangual; Luis Morales Steinman; Julio Nigaglioni Arrache; Nelson

Pérez Sosa; Harry N. Padilla Martínez; Francisco A. Rebollo Casalduc; Luis R. Rivera Rivera; Julie

Rodas Viñas; Manuel San Juan de Martinó; Irma Valdejulli Pérez; and Rafael Vila Carrión.

### 1.  Absolute judicial immunity

It is settled federal law that judges are immune from "liability for damages for acts committed

within their judicial jurisdiction." Pierson v. Ray, 386 U.S. 547, 553-54, 87 S.Ct.1213, 1217 (1967);

See also Stump v. Sparkman, 435 U.S. 349 (1978).  It is likewise settled that under federal law,

"admission to a jurisdiction's Bar is neither a legislative, administrative, nor ministerial act, but is

peculiarly a judicial function, for it is within the exclusive province of the judiciary to determine who

is to be permitted to practice before the courts." McFarland, 854 F. Supp. at 875; See also District

of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 476-82, 103 S.Ct. 1303, 1311-1315 (1983);

In re Summers, 325 U.S. 561, 65 S.Ct. 1306 (1945); Sparks v. Character and Fitness Committee, 859

F.2d 428 (6th Cir. 1988), cert. denied, 489 U.S. 1011 (1989); Brown v. Bar Examiners of Nevada,

623 F.2d 605, 610 (9th Cir. 1980); Powell v. Nigro, 601 F. Supp. 144, 148 (D.D.C. 1985). The

grading, deciding upon a motion for reconsideration and a petition for review to the Supreme Court

are traditional "judicial functions" of judging the fitness of an applicant for admission to the Bar.

McFarland, 854 F. Supp. at 875; Sparks, 859 F.2d at 433-34; Powell, 601 F.Supp. 144. Thus, all

claims brought against Justice Hernández Denton in his personal capacity for the Board's grading

of the Bar exam, considering and passing upon Plaintiff's motion for reconsideration, and the

Supreme Court's denial of petition for review[9] are hereby dismissed with prejudice.

   *2. Absolute quasi-judicial immunity*

        The same policy reasons that justify granting absolute immunity to judges, independence and

freedom from obstructive and harassing litigation, have been invoked to extend absolute immunity

to certain other quasi-judicial officials whose activities are integrally related to the judicial process

and involve the exercise of discretion comparable to that of a judge. Powell v. Nigro, 601 F.Supp.

144, 147 (D.D.C. 1985). See also Bettencourt v. Bd. Of Registration in Medicine, 904 F.2d 772, 782

(1st Cir. 1990); Ashbrook v. Hoffman, 617 F.2d 474 (7th Cir. 1980); Butz v. Economou, 438 U.S.

478, 508, 98 S.Ct. 2894, 2911 (1977); Imbler v. Pachtman, 424 U.S. 409,. 96 S.Ct. 985 (1976);

Simons v. Bellinger, 643 F.2d 774 (D.C. Cir. 1980). In assessing whether absolute immunity should

be afforded a quasi-judicial official, courts should apply a functional approach which considers:

> First, does [the officer], like a judge, perform a traditional "adjudicatory" function,
> in that he decides facts, applies law, and otherwise resolves disputes in the merits

---

[9]It is an uncontested fact that Associate Justice Hernández Denton did not participate in the Supreme
Court's decision to deny the petition for review.

(free from direct political influence)? Second, does [the officer], like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does [the officer], like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect a physician's constitutional rights?"

Bettencourt, 904 F.2d at 783.  See also Westfall v. Erwin, 484 U.S. 292 108 S.Ct. 580 (1988); Powell, 601 F.Supp. at 147.

All of the above questions have been answered in the affirmative by other jurisdictions that have considered the role of professional boards in evaluating their applicant's or member's qualifications.  See, e.g., Powell, 601 F.Supp. 144 (members of state Committee on Admissions to the Bar protected under doctrine of quasi-judicial immunity); Bettencourt, 904 F.2d 772 (members of state medical board protected under doctrine of quasi-judicial immunity).  This Court does not hesitate and follows the stated precedents because the Board Members have the same adjudicating functions as in the case of Bettencourt, 904 F.2d at 983.  As was stated in Powell:

> There can be little question that disgruntled applicants unhappy with their failing scores would institute civil suits challenging the accuracy of the Committee members administering and grading of the bar examination.  The threat of such litigation and time loss defending such actions would impair the members' judgment.  The intense nature of administering the bar examination and the likelihood of harassing litigation certainly supports granting the Committee members absolute immunity as to actions involving judge-like discretion.

601 F.Supp. at 149.  Accordingly, the Court finds the Board's former Executive Director, Ivette Roselló Rodríguez, and the individual Board Members, absolutely immune from liability for damages resulting from the grading of Plaintiff's Bar Exam and from the considering and passing upon Plaintiff's motion for reconsideration.  These are all acts in which Co-defendants exercised judge-like discretion.  Consequently, Plaintiff's claims for damages against Ivette Roselló González, Ariel O. Caro Pérez; José E. Colón Rodríguez; Héctor Cortes Babilonia; Carmen Curet Salim;

Waleska Delgado Marrero; Armando Martínez Fernández; Aida Martínez González; Gaspar Martínez Mangual; Luis Morales Steinman; Julio Nigaglioni Arrache; Nelson Pérez Sosa; Harry N. Padilla Martínez; Francisco A. Rebollo Casalduc; Luis R. Rivera Rivera; Julie Rodas Viñas; Manuel San Juan de Martinó; Irma Valdejulli Pérez; and Rafael Vila Carrión are dismissed with prejudice.

### 3. Absolute legislative immunity

Finally, Plaintiff claims damages against Justice Hernández Denton, former Board Director Roselló González, and each of the Board members, all in their individual capacity, for the promulgation of the corresponding Board Regulations that limit the number of opportunities to pass the Bar Examination.

First, of all the aforementioned Co-defendants only Justice Hernández Denton had any role in the promulgation of Rule 2(c) of the 1983 Bar Regulations. (Statement of uncontested fact no. 15, Docket No. 27) Further, only Justice Hernández Denton, Roselló González, Martínez Fernández, Martínez González, Rodas Viñas, Colón Rodríguez, Curet Salim, Valdejulli Pérez, Delgado Marrero, Nigaglioni Arrache, Pérez Sosa, and Vilá Carrión had any participation in the preparation and/or approval of the draft regulation which was eventually considered and adopted in 1998 and which included Rule 5.8.1 of the 1998 Regulations. (Statement of uncontested fact no. 16, Docket No. 27). Neither Caro Pérez, Cortés Babilonia, Martínez Mangual, Morales Steinmann, Padilla Martínez, Rebollo Casalduc, Rivera Rivera, or San Juan de Martinó had any participation in the preparation or approval of the draft regulation and, therefore, cannot be held personally liable for the promulgation of regulations limiting the number of opportunities to pass the Bar Examination. Plaintiff's claims for the promulgation of regulation by these Co-defendants are, consequently, dismissed with prejudice.

-12-

Second, as to the remaining Co-defendants sued for the promulgation of regulation limiting the number of opportunities to pass the Bar Exam, absolute legislative immunity mandates dismissal of Plaintiff's claims.  See McFarland, 854 F.Supp. at 875.  See also Supreme Court of VA v. Consumers Union of the United States, 446 U.S. 719, 734, 100 S.Ct. 1967, 1976 (1980); Levanti v. Tippen, 585 F.Supp. 499, 503 (S.D.CA. 1984).

### D.  Claims for equitable relief against government officials in their official capacity

Plaintiff's remaining claims are for equitable relief against Co-defendants sued in their official capacities.  Plaintiff seeks an order to hold an oral hearing for explanation of the grade given to Plaintiff in his exam and an order to allow Plaintiff to sit for the Bar Examination despite having failed on six previous occasions.  This second request is premised on the unconstitutionality of Rule 2(c) and its successor, Rule 5.8.1.

Admittedly, neither the Eleventh Amendment nor the definition of "persons" under § 1983 bar Plaintiff's claims for prospective injunctive relief.  See Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908); Mills v. Maine, 118 F.3d 37 (1st Cir. 1997); Will, 491 U.S. at 71 n.10; Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 117 S.Ct. 2028 (1997).  Nonetheless, Co-defendants argue that Plaintiff's claims for equitable relief must be dismissed on Due Process and Equal Protection grounds.

### 1.  Request for hearing on Plaintiff's Bar Examination score - Rooker-Feldman Doctrine

Since 1970 it has been clear that United States District Courts are without authority to review final determinations of state judicial proceedings.  Review of such judgments must be heard before the United States Supreme Court, and then only if federal rights are involved.  Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 44 S.Ct. 149, 150 (1970).  This doctrine applies to all judicial

proceedings before state courts, including proceedings before the state court regarding an applicant's admission to the state Bar. <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303 (1983).[10]

To the extent that Plaintiff requests that Co-defendants grant a hearing on his March 1997 Bar Examination in order to explain the score given to him, Plaintiff's claim for equitable relief is barred. A reading of Plaintiff's petition for review before the Supreme Court shows that such a challenge and request was already made before the state court. Since the Supreme Court denied such request, this Court lacks subject matter jurisdiction under the <u>Rooker-Feldman</u> doctrine to review such a decision. The Court's order as requested would simply amount to federal appellate review of the Supreme Court's decision issued on November 10, 1997. This the District Court may not do. <u>See Wang</u> v. <u>New Hampshire Board of Registration</u>, 55 F.3d 698, 703 (1st Cir, 1995); <u>Lancellotti</u> v. <u>Fay</u>, 909 F.2d 15, 17 (1st Cir, 1990); <u>Scariano</u> v. <u>Justices of the Supreme Court of Indiana</u>, 852 F. Supp. 708 (S.D. Ind. 1994); <u>Clark</u> v. <u>Virginia Board of Bar Examiners</u>, 861 F. Supp. 512 (E.D. Va. 1994).[11]

---

[10]In <u>Feldman</u> the Supreme Court acknowledged that Bar admission proceedings do not necessarily "assume the form commonly associated with judicial proceedings. As we said in <u>In re Summers</u>, supra, however, 'the form of the proceeding is not significant. It is the nature and effect which is controlling.'" 460 U.S. at 482, 103 S.Ct. at 1314.

[11]Even if Plaintiff's request for a hearing on his Bar Examination results were not barred under the <u>Rooker-Feldman</u> doctrine, Plaintiff's request would be barred under the doctrine of *res judicata*. In his petition for review before the Supreme Court, Plaintiff specifically presented the claims of procedural due process which he has raised before this Court to justify his request for a hearing. The Supreme Court's denial of a hearing constituted an adjudication on the merits. Therefore, Plaintiff is barred from relitigating the issue before this Court. If Plaintiff understood that the Supreme Court had denied him his federal rights, Plaintiff should have sought review of the Supreme Court's decision before the United States Supreme Court. ("Where a final state court adjudication of matters relating to membership in a state bar has been had, the only federal review available is in the [United States] Supreme Court by petition for certiorari." <u>Díaz Buxó v. Trías Monge</u>, 593 F.2d 153, 157 (1979); <u>see also</u> <u>Martínez Rivera v. Trías Monge</u>, 587 F.2d 539 (1st Cir. 1978).)

-14-

The above stated doctrine was applied by the First Circuit to a § 1983 claim in the case of

Wilhauck v. Halpin, 953 F.2d 689 (1ˢᵗ Cir. 1991), foreclosing the federal § 1983 litigation of a matter

that was or should have been litigated in the state court:

> It is well established that a federal court in a § 1983 action must give full preclusive effect to state court judgments adjudicating both issues and claims.  See Arecibo Radio Corp. v. Puerto Rico, 825 F.2d 589, 591-92 (1ˢᵗ Cir. 1987).  See also Cuesnongle v. Ramos, 835 F.2d 1486, 1497 n. 8 (1ˢᵗ Cir.1987); Cinelli v. City of Revere, 820 F.2d 474, 479 (1ˢᵗ Cir.1987) (citing Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)); Isaac v. Schwartz, 706 F.2d 15, 16 (1ˢᵗ Cir.1983). The Supreme Court has held that under the federal full faith and credit statute, [28 U.S.C. § 1738] federal courts in § 1983 actions must accord the same preclusive effect to state court judgments – both as to claims and issues previously adjudicated – as would be given in the state court system in which the federal court sits.  Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 83-84, 104 S.Ct. 892, 897-98, 79 L.Ed.2d 56 (1984).  The Court has rejected the notion that in the § 1983 context, "distrust of state courts ... would justify a limitation on the preclusive effect of state judgments," and has instead stressed the need to accommodate "notions of comity, [and to] ... prevent vexatious litigation." Migra, 465 U.S. at 84, 104 S.Ct. at 898.  Federal courts must therefore look to state law to determine whether a party to a § 1983 action will be barred from relitigating an issue previously presented in state court (issue preclusion), **or from raising a claim that could have been presented in the state proceeding (claim preclusion).** Id.
>
> \*\*\*
>
> [...] As we observed in Roy v. City of Augusta, 712 F.2d 1517, 1521 (1ˢᵗ Cir.1983), 'state courts, too, are guardians of the federal constitution.' **When a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court.  Where it is not, the party is barred by principles of res judicata from later raising the constitutional claim against the same parties in a federal section 1983 action.** Id. (citations omitted).  On the other hand, if Willhauck did raise an unsuccessful attack on section 25 in the Suffolk County prosecution, Willhauck's only recourse for an erroneous denial of his constitutional claims would have been to pursue the denial of his facial challenge through the state courts and then by writ of certiorari to the United States Supreme Court." (Emphasis added)

Willhauck v. Halpin, 953 F.2d 689, 704-706 (1ˢᵗ Cir. 1991).

Further, this Court may not set aside the state court judgment because plaintiff has latter

invoked the Civil Rights Act in a federal complaint. "A complaint under the Civil Rights Act does not provide the springboard for an unhappy state litigant to raise his federal claims de novo in federal court." Fortune v. Mulherrin, 533 F.2d 21, 22 (1st Cir. 1976), cert. denied 429 U.S. 864, 97 S.Ct. 170 (1976).

   *2. Request for order that Plaintiff be allowed to take the Bar Examination - Res judicata*

   Plaintiff's request for an order that he be allowed to take the Bar Examination is based on a constitutional challenge to the Board Regulations that limit the number of opportunities to pass the Bar Examination. To the extent that this is a general or facial challenge of the Regulations, this Court has subject matter jurisdiction under Feldman. 460 U.S. 482, 103 S.Ct. 1314. See also Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620 (1990). The Court may not, however, ignore a *res judicata* defense raised by defendants where the challenge brought before this Court was or could have been litigated in the prior state court proceedings. Guess v. Bd. of Medical Examiners, 967 F.2d 998, 1003 (4th Cir. 1992). On the contrary, "a federal court assessing the issue or claim preclusive effect of a state court decision 'must give to the state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" Randolph v. Lispcher, 641 F.Supp. 767, 774-775 (D.N.J. 1986); citing from Migra v. Warren City School District Board of Education, 465 U.S. 75, 81, 104 S.Ct. 892, 896 (1984). See also Dasher v. Supreme Court of Texas, 658 F.2d 1045 (5th Cir. 1981). Puerto Rico's law on *res judicata* clearly precludes litigation of any claim or issue which **was or could have been litigated in a prior judicial action**. Báez Cruz v. Municipality of Comerío, 140 F.3d 24 (1st Cir. 1998); Sahar Fatach v. Seguros Triple S, Inc., ____ F.Supp.2d ___, 1999 WL 202852 (Puerto Rico). See generally, Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 (1979).

-16-

"[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." <u>United States v. Mendoza</u>, 464 U.S. 154, 158, 104 S.Ct. 568, 571 (1984).

Co-defendants acknowledge that Plaintiff's motion for reconsideration and petition for review before the Supreme Court did not present a facial challenge to the constitutionality of Rule 2(c), now Rule 5.8.1. Co-defendants do argue, however, that Plaintiff should have raised this challenge. The Court disagrees.

Plaintiff's petition for review before the Supreme Court was a request for the Supreme Court to order the Board to declare that he had passed the Bar Examination on his sixth attempt or, in the alternative, to grant him a hearing where he could challenge the Board's finding that he had not passed the Examination. Plaintiff did argue at the time that denying him this hearing would result in an unconstitutional application of Rule 2. Plaintiff, however, never challenged the constitutionality of Rule 2, nor did Plaintiff have to do so at the time. Plaintiff had not yet applied to take the Bar Examination a seventh time, hence, neither the Board nor the Supreme Court had applied Rule 5.8.1 against him. Since Plaintiff was not barred until then from taking the Examination under Tule 5.8.1, Plaintiff could not make a challenge to the rule as applied to him or on its face. Consequently, *res judicata* principles do not preclude Plaintiff from raising this challenge before this Court.

### E. *Constitutional challenge to Rule 2(c), now Rule 5.8.1*

"A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. [...] A State can require high standards of qualification, such as good moral

character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. [...] Even in applying permissible standards, officers of a State cannot exclude an applicant where there is no basis for their finding that he fails to meet those standards, or when their action is invidiously discriminatory." Schware v. Bd. of Bar Examiners, 353 U.S. 232, 238-239, 77 S.Ct. 752, 756 (1957).

*1. Equal protection challenge*[12]

The Board's Regulations, including Rule 2(c), are drafted and promulgated as part of the Supreme Court's rule-making authority. As such, the Board's Regulations are treated as legislation for Equal Protection purposes. Scariano, 852 F.Supp. at 712; Schumacher v. Nix, 965 F.2d 1262, 1266 (3rd Cir. 1992); Salibra v. Supreme Court of Ohio, 730 F.2d 1059, 1062 n. 5 (6th Cir. 1984). Under Equal Protection standards, the practice of law is not a fundamental right. Tolchin v. Supreme Court of State of New Jersey, 111 F.3d 1099, 1113 (3rd Cir. 1997); Giannini v. Real, 911 F.2d 354, 358 (11th Cir. 1990); Edelstein v. Wilentz, 812 F.2d 128, 132 (3rd Cir. 1987); Lupert v. California State Bar, 761 F.2d 1325 (9th Cir. 1985). Hence, legislation regulating the practice of law is scrutinized under the rational basis test. Scariano, 852 F.Supp. at 712; Lowrie v. Goldenhersh,716 F.2d 401, 412 (7th Cir. 1983). Pursuant to the Equal Protection's rational basis test, legislation will be sustained if it is rationally related to a legitimate state interest and it is neither arbitrary, unreasonable or irrational. Inmates of Suffolk County Jail v. Rouse, 129 F.2d 649 (1st Cir. 1997); LCM Enterprises, Inc. v. Town of Dartmouth, 14 F.2d 675 (1st Cir. 1994); New Orleans v. Dukes,

---

[12]Plaintiff argues that rule 2(c) "usurp [sic] any meaning of rationality and for ending openly infringe [sic] historical Principles of Equal Protection of Law." (Docket No. 28 at pg. 2.)

427 U.S. 297, 303 (1976).[13]

Rule 2(c), now Rule 5.8.1, limits the number of opportunities an applicant in Puerto Rico has to pass the Bar Examination. This rule is the result of a policy judgment whereby the Supreme Court has determined that applicants who fail the Bar Examination on six (6) occasions have failed to demonstrate the minimum legal proficiency necessary to gain admission to the Bar. This policy judgment, and hence the resulting limitation, certainly bears a rational relationship to the State's legitimate interest in securing the competency of its Bar membership.[14] Plaintiff's Equal Protection challenge is, consequently, meritless.

### 2. Due process challenge

Plaintiff's due process challenge is equally without merit. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim v. Wakinekona, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748 (1983). Without a protected liberty or property interest, a party is entitled to no process at all.

The existence and scope of any protected property interest surrounding the Bar application process depends on state law. Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). See also Semaphore Entertainment Group Sports Corp. v. Roselló González, 919 F.Supp.

---

[13]Rational scrutiny imposes upon the party challenging a regulation the burden of proving that the regulation is not rationally related to a legitimate state interest. New Orleans, 427 U.S. at 303. Plaintiff has failed to make this showing.

[14]States have a legitimate interest in regulating the practice of the law and the admission to the Bar. Pursuant to this interest, states may impose qualifications which have a rational relationship to an applicant's ability to practice law. In fashioning these qualifications a state may reasonably determine that repeated failures to pass the Bar Examination reflect negatively upon an applicant's competency. The number of times an applicant fails the Bar Examination may, therefore, be considered in regulating the admission to the Bar. See McFarland, 854 F.Supp. 883-884; Feldman, 460 U.S. at 485 n.16; Galfarb v. Virginia State Bar, 421 U.S. 773, 792-793 (1975); Schware v. Bd. of Bar Examiners, 353 U.S. 232, 239 (1957). See also Jones v. Bd. of Commissioners of Alabama State Bar, 737 F.2d 996, 1001 (11th Cir. 1984); Poats v. Givan, Chief Justice, 651 F.2d 495, 497, 499-500 (7th Cir. 1981); Younger v. Colorado State Bd. of Bar Examiners, 625 F.2d 373, 377 (10th Cir. 1980).

543, 549 (D.P.R. 1996); Bishop v. Wood, 426 U.S. 341, 346 (1976). The existence and scope of any protected liberty interest surrounding the Bar application process arises either from the Constitution itself or from state law. McFarland, 854 F.Supp. 883. Under the Constitution there is no unqualified property or liberty interest to practice law, hence, there is no property or liberty interest surrounding the Bar application process. Id. The question, then, is whether under Puerto Rico's law there is a liberty or property interest to practice law or as to some aspect of the Bar application process.

Puerto Rico's Constitution, laws or jurisprudence do not openly recognize a fundamental right to practice law. See Defendini Collazo v. E.L.A., 134 D.P.R. _____, 134 TSPR 32 (1993). Notwithstanding, one might infer a protected liberty interest in the practice of law or in the Bar application process if the State has placed any "substantive limitations" or "substantive predicates" to govern decision-making by state actors. One may also find such interests if the State has mandated a specific outcome to be reached upon a finding that relevant criteria have been met. McFarland, 854 F.Supp. at 883; Olim, 461 U.S. at 249.

In Puerto Rico the Supreme Court has established "substantive predicates" surrounding the process for application and admission into the Bar. See Regulations. (Docket No. 27, Exh. 7) Rule 4.1 of the Regulations, for example, establishes the requirements for admission to the practice of law. (Docket No. 27, Exh. 7) Thus, any applicant who meets the enumerated requirements is entitled to be admitted to the Bar. Clearly, then, these "substantive predicates" create in favor of Plaintiff and any other applicant a liberty interest in having the Bar Examination graded correctly and in receiving a passing grade if he obtained the minimum established grade. As a result, Plaintiff must be provided due process before his application to the Bar can be denied on grounds of not having passed the Examination. Therefore, the next question that must be addressed is whether Plaintiff has been

denied due process. The Court finds that he has not.

As part of his sixth application to the Bar, Plaintiff had available, and in fact resorted to, a judicial process where he could litigate whether his Bar Examination was adequately corrected and whether his answers to the Examination should have resulted in his obtaining a passing grade. If Plaintiff did not take full advantage of this judicial process by seeking review of his constitutional challenges before the United States Supreme Court, Plaintiff lost that opportunity. Under the Rooker-Feldman doctrine discussed above, Plaintiff may not now relitigate those questions before this District Court. Wilhauck, 953 F.2d at 704-706; Fortune, 533 F.2d at 22. Hence, the Court will not discuss this point any further.

The above finding, however, does not end the Court's inquiry. The Court must tackle Plaintiff's other contention, that Rule 2(c)'s limitation on the number of opportunities to pass the Bar Examination violates his Due Process rights. As was stated previously, this is a facial challenge that is amenable to litigation before this Court.

To prevail upon a due process claim a Plaintiff must establish: 1) a constitutionally cognizable interest in life, liberty or property; 2) a governmental deprivation of that interest; and 3) the inadequacy of the procedures accompanying that deprivation. Failure to comply with any of these elements is fatal. McFarland, 854 F.Supp. at 884. See also Daniels v. Williams, 474 U.S. 327, 196 S.Ct. 662 (1986); Lehr v. Robertson, 463 U.S. 248, 256, 103 S.Ct. 2985, 2990, 77 L.Ed.2d 614 (1983); Greenholtz v. Inmates of the Nebraska Penal and Correction Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); Bd. of Regents v. Roth, 408 U.S. 564, 569-570, 92 S.Ct. 2701 (1972).

Here, Plaintiff cannot even establish the existence of a constitutionally protected interest in

taking the Bar Examination an unlimited number of times. Plaintiff claims that at the time he began his studies there was no limit on the number of opportunities to pass the Bar Examination, thus he has an entitlement to apply to the Bar without being subjected any limitations on how many times he takes the Examination. The Court finds, however, that before Plaintiff completed his studies in Law, Plaintiff did not have said entitlement. It was not until Plaintiff had completed his studies in Law that Plaintiff met the requirements for application to the Bar. It was when Plaintiff finally met these requirements that Plaintiff's legitimate expectation arouse. Pursuant to the governing Rule at the time, Plaintiff's legitimate expectation was for five (5) opportunities to take the Bar Exam. Only if the Supreme Court further curtailed the number of opportunities available to Plaintiff would Plaintiff have an arguable constitutionally cognizable property interest. Thus, the Court finds that Plaintiff has not proven an entitlement to take the Bar Examination as many times as he pleases.

Moreover, the Court finds that Rule 5.8.1's six (6) opportunity limitation must be sustained under Due Process principles. As with the Equal Protection analysis above, under Due Process principles the Court must determine whether the rule is rationally related to a legitimate state interest. The Court has already determined that the rule passes rationality muster.[15] The State has a legitimate interest in protecting the public from incompetent lawyers and repeated failures in a Bar Examination may in itself reflect upon a person's incompetency to practice law. Thus, the limitation on the number of times an applicant may take a Bar Examination is rationally related to the state's legitimate interest in ensuring the competency of its Bar.

———————————————

[15]Other litigants challenging similar limitations have argued that they have a fundamental right to take the bar examination and practice law and that any classification affecting these rights is subject to strict scrutiny. These arguments, however, have been rejected by courts reasoning that the Supreme Court of the United States has never held the right to pursue a particular occupation a fundamental right. Rather, the Supreme Court has applied the traditional rational basis review. See, e.g., Jones v. Alabama State Bar, 737 F.2d 996 (11th Cir. 1984); Younger v. Colorado State Bd. of Law Examiners, 625 F.2d 372 (10th Cir. 1980);

*3. Ex post facto challenge*

Plaintiff's final argument is clearly without merit. It is a well established principle of law that the constitutional prohibition against ex post facto laws relates only to criminal matters. Collins v. Youngblood, 497 U.S. 37, 41-42 (1990), Kooningsberg v. State Bar of California, 366 U.S. 36, 47 n. 9 (1961); Harisiades v. Shaughnessy, 342 U.S. 580, 594-95 (1952). Since the Regulation in question is purely a civil matter, the Court is not faced with the issue of an ex post facto law. See Moity v. Louisiana State Bar Ass'n, 414 F. Supp. 180, 183 (1976) (reasonable changes to Bar Admission requirements do not involve the Ex Post Facto clause).

## F.    Conclusion

For the reasons stated above, Co-defendant's Motion for Summary Judgment is **GRANTED**. All claims against Defendants are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

Date: September **30**, 1999

_____
Daniel R. Domínguez
United States District Court Judge

N \98-1243 SJ